UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JENNIFER B. MILLER (FKA FOSGITT),

     Plaintiff,       Case No. 19-12826

v.               Honorable Thomas L. Ludington

THE BANK OF NEW YORK MELLON,
SUCCESSOR TO JPMORGAN CHASE
BANK, NATIONAL ASSOCIATION,
AS TRUSTEE FOR F/B/O HOLDERS OF
STRUCTURED ASSET MORTGAGE
INVESTMENTS II INC., BEAR STERNS
ALT-A TRUST 2005-10, MORTGAGE
PASS-THROUGH CERTIFICATES AND
SELECT PORTFOLIO SERVICING, INC.,

     Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

On August 28, 2019, Plaintiff, Jennifer Miller, filed a complaint against Defendants Bank of New York Mellon and Select Portfolio Servicing, in Midland County Circuit Court. ECF No. 1-2 at PageID.15-35. Plaintiff asserted ten counts in her complaint—seeking declaratory relief, asserting quiet title, alleging illegal foreclosure under Michigan law and violations of the federal Real Estate Settlement Procedures Act, alleging breach of contract, requesting conversion to judicial foreclosure, and seeking injunctive relief. *Id.* The case was removed on September 27, 2019. ECF No. 1. On October 18, 2019, Defendants filed a motion to dismiss. ECF No. 5. As explained below, Defendants' motion will be granted in part and denied in part.

# I.

A pleading fails to state a claim under Rule 12(b)(6) if it does not contain allegations that support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleadings in the non-movant's favor and accepts the allegations of facts therein as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The pleader need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678–79 (quotations and citation omitted). Also, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*

Documents attached to a complaint "become part of the pleadings and may be considered on a motion to dismiss." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007); Fed. R. Civ. P. 10(c). In addition, "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Industries, Inc. v. Irvin,* 496 F.3d 1189, 1206 (11th Cir. 2007); *Mengel Co. v. Nashville Paper Prods. & Specialty Workers Union, No. 513*, 221 F.2d 644, 647 (6th Cir. 1955); *Hamilton Foundry & Mach. Co. v. Int'l Molders & Foundry Workers Union of N. Am.*, 193 F.2d 209, 216 (6th Cir. 1951); *Simmons v. Peavy–Welsh Lumber Co.,* 113 F.2d 812, 813 (5th Cir.1940) ("Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control.").

## II.

The allegations in a plaintiff's complaint are presumed true in addressing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). A summary of the facts from Plaintiff's complaint follow.[1]

Plaintiff and Richard Fosgitt II purchased 5004 Bristolcone Dr., Midland, MI by a quit claim deed from Strata Homes LLC on October 17, 2005. ECF No. 1-2 at PageID.16, 61. On or about October 17, 2005, Plaintiff and Richard Fosgitt II obtained a $423,600 loan from CTX Mortgage Company, LLC. Plaintiff's complaint refers to "CMX Mortgage Company, LLC" but the attached mortgage lists "CTX Mortgage Company, LLC" as the lender. ECF No. 1-2 at PageID.38. Plaintiff and Richard Fosgitt II granted Mortgage Electronic Registration Systems, Inc. ("MERS") a mortgage securing the loan. *Id.* at PageID.17.

On November 23, 2016, the mortgagee's interest in the mortgage was assigned from MERS to Bank of New York Mellon ("BNYM"), who became Trustee of the mortgage. *Id.*; ECF No. 1-2 at PageID.64. The assignment of the mortgage was recorded on December 21, 2016. *Id.* Defendant Select Portfolio Servicing, Inc. ("SPS") is the current servicer for the mortgage. ECF No. 1 at PageID.17.

At some point, Plaintiff and Richard Fosgitt II obtained a divorce. *See* ECF No. 1-2 at PageID.90. In one of the documents Plaintiff submitted to SPS, she refers to herself as the only borrower on the mortgage. ECF No. 1-2 at PageID.90. She explains that she and Richard Fosgitt II are both parties to the mortgage, but that the loan is "my responsibility via court order." ECF No. 1-2 at PageID.93. In the documents attached to her complaint, Plaintiff also alleges the

---

[1] The alleged facts have multiple gaps, but any omissions are due to Plaintiff's complaint.

property was the family home prior to the divorce, but it is now a rental property.[2] ECF No. 1-2 at PageID.90.

On or about December 1, 2015, Plaintiff contacted "Chase"[3] to request modification of the loan and was verbally told she could not apply for modification until she was behind on payment. *Id.* On January 22, 2016, Plaintiff mailed a request for mortgage assistance ("RMA") to Chase Mortgage.[4] On March 20, 2016, Plaintiff received a response from Chase that stated the RMA had expired and requested additional information. *Id.* On April 1, 2016, Plaintiff mailed the additional information. *Id.*

On April 11, 2016, Plaintiff received a letter from SPS stating they were the new servicer for her mortgage. *Id.* at PageID.18. On June 28, 2016, Plaintiff mailed her updated RMA to SPS. On December 12, 2016, Plaintiff received a letter from SPS indicating that her RMA application was complete. ECF No. 1-2 at PageID.64. However, on December 21, 2016, Plaintiff received a letter indicating SPS needed additional information. *Id.* Plaintiff resent her full application on January 24, 2017 and resent her pay stubs on February 17, 2017 after they were requested again. *Id.* On March 7, 2017 Plaintiff resent her RMA application. *Id.* at PageID.19. On March 22, 2017, she resent information regarding her bank statement. *Id.* On March 24, 2017, Plaintiff reports she emailed SPS to obtain the status of her RMA and asked why she is receiving "harassing calls for payment." *Id.*

On March 27, 2017 Plaintiff emailed the "Michigan Attorney General-Complaint" regarding her treatment by SPS. *Id.* In April and May she continued to seek an update from SPS

---

[2] This conflicts with facts alleged in Plaintiff's complaint where she asserts that she lives at the property and if the foreclosure is not reversed, she will be evicted. ECF No. 1-2 at PageID.16, 32-33.
[3] It is unclear who Plaintiff contacted. The mortgage was still owned by CTX Mortgage Company as of December 2015, but Chase would seem to refer to Bank of New York Mellon who is the successor trustee for JP Morgan Chase Bank.
[4] Plaintiff does not explain whether she was in arrears on mortgage payments at this date.

and provide information as requested. *Id.* She also attempted to obtain a loan modification so she could rent the home[5] or to sell the home. *Id.* at PageID.19-20. Plaintiff continued to receive communication from SPS including multiple requests for additional information, submitted the requested information to SPS, and sought to understand the status of her RMA. *Id.* at PageID.20. On June 23, 2017, Plaintiff received an email from the SPS Ombudsman, but Plaintiff does not specify the content of the email.[6] *Id.*

On February 21, 2018, Plaintiff sent an email to SPS with a "completely new RMA, clarification, email notes Plaintiff never received a denial, nor received an answer." *Id.* at PageID.21. She also "received a letter that her mortgage had been referred for legal action (i.e. foreclosure) [and a] letter from Trott[7] stating they planned to foreclose." *Id.* On February 26, 2018, Plaintiff received a letter stating the foreclosure sale was rescheduled to March 27, 2018, but foreclosure would not occur if she had applied for a modification. *Id.* The next day, Plaintiff received a foreclosure advertisement. She submitted a hardcopy of the RMA on March 1, 2018. *Id.* On March 8, 2018, Plaintiff received an email from SPS providing the foreclosure sale was rescheduled for April 10, 2018 and requested additional RMA information. *Id.*

On March 20, 2018, Plaintiff "sent email serving as formal appeal of denial of the RMA." *Id.* at PageID.22. Plaintiff received a letter rescheduling the foreclosure sale to May 15, 2018. *Id.* On May 21, 2018, "Plaintiff sent email to SPS appealing decision as SPS provided no deadline for submittal," but it is unclear what exactly Plaintiff appealed as she indicated she emailed SPS on March 20, 2018 appealing an alleged denial of her RMA. *Id.* On June 12, 2018, Plaintiff sent an

---

[5] It is unclear why she needed a modification for her to rent the home because Plaintiff indicated in her first updated RMA application that she had a renter in the home. ECF No. 1-2 at PageID.90-91.
[6] Plaintiff indicates in her complaint that the email is in exhibit 24. However, her complaint only has eight numbered exhibits and this particular email is not included.
[7] Plaintiff does not explain who Trott is.

email to SPS requesting that the foreclosure sale be postponed beyond June 19, 2018 (which assumes SPS had delayed the foreclosure sale yet again to the June 19, 2018 date). *Id.* On July 17, 2018, Plaintiff received an email from BNYM "stating that SPS was servicer [of the loan] and that 'BNY Mellon is acting as a Trustee, and therefore we do not own the loan or the property. As Trustee, BNY Mellon is not involved in the servicing of the loans or the foreclosure process. This is the responsibility of the Servicer.'" ECF No. 1-2 at PageID.22-23. Plaintiff does not explain what prompted the email from BNYM. On July 2018 Plaintiff emailed SPS requesting the foreclosure sale be postponed again and seeking proof of ownership.[8] *Id.* at PageID.23. A sheriff's sale on the property occurred on March 19, 2019. *Id.* at PageID.34, 67. BNYM purchased the property at the sale. ECF No. 1-2 at PageID.67.

**A.**

Defendants argue Plaintiff fails to state a claim for declaratory relief because she "does not contest that she defaulted under the terms of the Note and Mortgage and do[es] not allege that [s]he paid off the debt." ECF No. 5 at PageID.172. She also has "failed to allege a defect in the foreclosure proceeding and resulting prejudice." ECF No. 5 at PageID.172.

In her complaint, "Plaintiff prays this Court declare the rights and interests of the parties and if Plaintiff's rights are superior to that of Defendants' rights." ECF No. 1-2 at PageID.23. Michigan Court Rule 2.605 provides power to Michigan courts to enter declaratory judgments. Specifically, the rule provides

> (A) Power to Enter Declaratory Judgment.
>     (1) In a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted.
>     (2) For the purpose of this rule, an action is considered within the jurisdiction of a court if the court would have jurisdiction of an action on

---

[8] It is unclear what she is seeking proof of ownership over, her mortgage, the loan, the property, or something else.

> the same claim or claims in which the plaintiff sought relief other than a declaratory judgment.

"Because declaratory judgment acts are procedural in nature and do not affect underlying substantive rights, the *Erie* doctrine, mandates application of the Declaratory Judgment Act, 28 U.S.C. § 2201, to [plaintiff's] request for declaratory relief based on state law." *Horn v. City of Mackinac Island*, 938 F. Supp.2d 712, 714 n.1.

The Sixth Circuit has explained there are two principles courts should use "in determining whether a declaratory ruling is appropriate." *Grand Truck W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984). First is whether "the judgment will serve a useful purpose in clarifying and settling the legal relations in issue" and second is if the declaratory judgment "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Id.* These two principles should be applied by analyzing five factors

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata;' (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective." *Id.*

Here, Plaintiff alleges she did not receive a notice of default. ECF No. 1-2 at PageID.26-27. Defendants respond by providing evidence to refute Plaintiff's claim (ECF 5-4 at PageID.210-213) alleging that Plaintiff attached a notice of default in a previous case.[9] However, a motion to dismiss focuses solely on the facts alleged in the complaint and not evidence provided in Defendant's motion or Plaintiff's response. *See Ross v. PennyMacLoan Sers., LLC*, 761 Fed.

---

[9] Plaintiff's complaint in a previously voluntarily dismissed case, 19-10644, explains that "[o]n or about July 06, 2016, Defendant Select Portfolio, Inc. sent Notice of Default – Right to Cure ("Notice") listing Defendant The Bank of New York Mellon (Bank of New York Trust) as the Noteholder" and attaching the notice of default as an exhibit. ECF No. 1-2 at PageID.15 in 19-10644.

Appx. 491, 494 (6th Cir. 2019); *I.L. by and through Taylor v. Tenn. Dep't of Educ.*, 739 Fed. Appx. 319, 321 (6th Cir. 2018). An analysis of the Grand Trunk factors is not necessary at this juncture because Defendants have not established that Plaintiff fails to state a claim. Plaintiff has pled sufficient facts, specifically lack of notice of her foreclosure, to establish an alleged defect in the foreclosure proceeding to prevail on a motion to dismiss the declaratory judgment count.

**B.**

Plaintiff's second claim is for quiet title. MCL 600.2932(1) provides

> Any person, whether he is in possession of the land in question or not, who claims any right in, title to, equitable title to, interest in, or right to possession of land, may bring an action in the circuit courts against any other person who claims or might claim any interest inconsistent with the interest claimed by the plaintiff, whether the defendant is in possession of the land or not.

Plaintiff alleges that she "is the owner of the Subject Property" and "[o]ne or more of the Defendants claim an interest in the Subject Property inconsistent with the interest claimed by Plaintiff." ECF No. 1 at PageID.24. Her factual allegations alone are sufficient to prevail on a motion to dismiss. However, Plaintiff included a copy of the quit claim deed conveying title of the property to Richard L. Fosgitt, II and Jennifer B. Fosgitt as an attachment to her complaint. ECF No. 1-2 at PageID.61. Therefore, Plaintiff's assertion that she is the sole owner of the property is contradicted by her exhibits. "This is not a case where the plaintiff has pleaded too little, but where [s]he has pleaded too much and has refuted h[er] own allegations by setting forth the evidence relied on to sustain them. . . . Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control." *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940); *Mengel Co. v. Nashville Paper Prods. & Specialty Workers Union, No. 513*, 221 F.2d 644, 647 (6th Cir. 1955) ("The allegation in the complaint 'that the Union violated the contract in taking said discharge to arbitration,' is a conclusion on the part of

the pleader, which the Court is not required to accept if [it is] in conflict with the facts stated in the complaint."). She furnishes no explanation or documentation showing that title for the property was later transferred solely to her. Plaintiff explains in a document she submitted to SPS that she has a legal obligation to pay the mortgage on the property, but there is no information explaining that after the divorce title to the property was conveyed to her alone. Therefore, without more, Plaintiff fails to state a claim for quiet title of the property against Defendants. Plaintiff's claim for quiet title will be dismissed.

## C.

In the third count of Plaintiff's complaint she alleges Defendants failed to follow the requirements for Michigan's foreclosure by advertisement statute. Michigan law not only provides the process for foreclosures by advertisement, but "also controls the rights of both the mortgagee and mortgagor once the sale is completed." *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 359. Unless the property is redeemed within six months after the foreclosure sale, the sheriff's deed becomes operative and vests in the grantee. MCL §§ 600.3236, 600.3240(8). "The mortgagor's 'right, title and interest in and to the property' are extinguished" after the six month redemption period expires. *Conlin*, 714 F.3d at 359. "Michigan courts have held that once the statutory redemption period lapses, they can only entertain the setting aside of a foreclosures sale where the mortgagor has made 'a clear showing of fraud, or irregularity'" regarding the foreclosure procedure. *Id.* (quoting *Schulthies v. Barron*, 167 N.W.2d 784, 785 (Mich. App. 1969)).

The requirements for a foreclosure by advertisement are,

> (1) A party may foreclose a mortgage by advertisement if all of the following circumstances exist:
>     (a) A default in a condition of the mortgage has occurred, by which the power to sell became operative.
>     (b) An action or proceeding has not been instituted, at law, to recover the debt secured by the mortgage or any part of the mortgage or, if an action

> or proceeding has been instituted, either the action or proceeding has been discontinued or an execution on a judgment rendered in the action or proceeding has been returned unsatisfied, in whole or in part. . . .
> (c) The mortgage containing the power of sale has been properly recorded.
> (d) The party foreclosing the mortgage is either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage.
>
> . . .
>
> (3) If the party foreclosing a mortgage by advertisement is not the original mortgagee, a record chain of title must exist before the date of sale under section 3216 evidencing the assignment of the mortgage to the party foreclosing the mortgage. MCL § 600.3204.

In this case, the foreclosure sale occurred on March 19, 2019. Plaintiff filed suit on August 28, 2019. The six month redemption period ended in September 2019.

Plaintiff's attempt to allege fraud or irregularity in the foreclosure process is her claim that "BONYTC does not own the Note . . . does not own an interest in the Note, . . . [and] was not the servicer of the Mortgage." ECF No. 1-2 at PageID.26. Therefore, "BONYTC did not satisfy the requirements of MCL 600.3204(1)(d) needed to foreclose by advertisement." *Id.* Plaintiff does not explain the acronym BONYTC, nor does she use the acronym in any other location in her complaint. It appears Plaintiff is referring to Bank of New York Mellon, although it is unclear why she uses this acronym with no explanation. Therefore, for purposes of the motion to dismiss, the Court will assume the BONYTC is BNYM. Accordingly, despite Plaintiff's allegations of an email from BYNM explaining it was a Trustee of the loan and it "do[es] not own the loan or the property" (which presumably is the fact is she was relying on in making this assertion), Plaintiff provides a corporate assignment of mortgage between MERS and Bank of New York Mellon with her complaint. ECF No. 1-2 at PageID.64. In addition, Plaintiff includes the sheriff's deed to the property which states

> a certain mortgage was granted by Jennifer B. Fosgitt, a married woman and Richard L. Fosgitt II, her husband, mortgagor(s), to Mortgage Electronic

>Registration Systems, Inc., Mortgagee, dated October 17, 2005, and recorded on October 24, 2005 in Liber 1316 on page 703, and modified by Affidavit or Order recorded on November 9, 2016 in Liber 1601 on Page 113, and assigned by said Mortgagee to The Bank of New York Mellon, successor trustee to JPMorgan Chase Bank, National Association, as Trustee f/b/o holders of Structured Asset Mortgage Investments II Inc., Bear Stearns ALT-A Trust 2005-10, Mortgage pass-Through Certificates, Series 005-10 as assignee as documented by an assignment dated November 23, 2016 recorded on December 21, 2016 in Liber 1602 on Page 100, in Midland County Records, Michigan. ECF No. 1-2 at PageID.67.

The Court must construe allegations in favor of Plaintiff for a motion to dismiss. Here, however, Plaintiff provides documentation that undermines her factual allegations. Accordingly, Plaintiff fails to allege fraud that BONYTC does not own the loan when she furnishes documentation showing the assignment of the loan to BNYM and the sheriff's deed that corroborates the assignment. Therefore, she has failed to state a claim for fraud in the foreclosure process. An unattached alleged email from BNYM is insufficient to meet the "'high standard'" in order to have a foreclosure set aside after the lapse of the statutory redemption period as required by Michigan law considering the other evidence she provided. *Conlin*, 714 F.3d at 360. Plaintiff's claim for Count III – illegal foreclosure under MCL 600.3204 will be dismissed.

**D.**

Plaintiff further alleges "illegal foreclosure-respecting notice of default" for Count IV of her complaint. ECF No. 1-2 at PageID.26-27. Defendants combine their analysis of Counts III and IV into a single MCL § 600.3204 argument. They argue there is no clear showing of fraud from the foreclosure, and even if there were, Plaintiff has not alleged prejudice from the fraud. ECF No. 5 at PageID.173-178. However, Plaintiff does not refer to MCL § 600.3204 in Count IV and there is no similarity between Count III and Count IV, except for the beginning of each count including the language "illegal foreclosure." The only reference to a statute, case, rule, or contract in Count IV is "the Notice of Default under Section 22 of the Mortgage." It is not alleging a MCL § 600.3204

claim. Accordingly, Defendants argument that Plaintiff has not provided a clear showing of fraud is without merit. Defendants' motion to dismiss Count IV will be denied.

**E.**

Count V of Plaintiff's complaint alleges violations of Regulation X also known as 12 CFR 1024.41. ECF No. 1-2 at PageID.27. Regulation X allows "a borrower [to] enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))." 12 CFR § 1024.41(a). It requires prompt notification of receipt of a loss mitigation application, prohibits first notice of a foreclosure unless certain conditions are met, prevents a servicer for moving for an order of sale if a borrower has submitted a loss mitigation application that has not been denied, allows a borrower to appeal a loss mitigation application denial, and requires loss mitigation applications to be transferred between servicers, if necessary. For Count V, Plaintiff has alleged that Defendants violated the prohibition on dual tracking. ECF No. 1-2 at PageID.27.

Defendants argue Plaintiff fails to state a claim under RESPA because she "failed to plead facts showing actual damages." ECF No. 5 at PageID.179. RESPA only allows recovery for actual damages, statutory damages up to $2000 for repeated violations, and litigation costs if plaintiff is successful. 12 U.S.C. § 2605(f); *Szczodrowski v. Specialized Loan Servicing*, LLC, 2015 WL 1966887 at *7 (E.D. Mich. 2015). Courts in this district have previously held that for a plaintiff "[t]o successfully plead a RESPA claim, [she] must allege actual damages, which resulted from the Bank Defendants' failure" to comply with RESPA. *Battah v. ResMAE Mortgage Corp.*, 746 F. Supp. 2d 869, 876 (E.D. Mich. 2010). "The complete absence of alleged damages warrants a dismissal of Plaintiff's RESPA claim." *Id.* In a similar case where a plaintiff's principal relief was to set aside a sheriff's sale of their property, Judge Steeh concluded that that relief "is unavailable to him under RESPA." *Houle v. Green Tree Servicing*, LLC, 2015 WL 1867526 at *4 (E.D. Mich.

2015). Judge Steeh granted the defendant's motion to dismiss because the plaintiff in that case failed to allege monetary damages. *Id.* ("In order to seek monetary damages for a RESPA violation, plaintiff is required to make damage allegations, which are absent in this plaintiff's complaint.").

In her prayer for relief, Plaintiff sought "[a]gainst Defendants, for their violations of RESPA, award Plaintiff actual damages, additional [statutory] damages of $2000, attorney's fees, costs and litigation expenses." ECF No. 1-2 at PageID.35. She also seeks "an order requiring Defendants to remove or otherwise rescind any and all negative information transmitted to any credit agency which appears on Plaintiff's credit report/s [sic] in relation to the illegal foreclosure." ECF No. 1-2 at PageID.35. The Sixth Circuit has held that when a plaintiff alleged "Chase provided information to consumer reporting agencies regarding overdue payments that were related to her QWR during the prohibited 60-day period [it was] sufficient[] [to] state[] a RESPA violation." *Marais v. Chase Home Fin., LLC*, 736 F.3d 711, 721 (6th Cir. 2013). Here, however, Plaintiff does not mention any actual damages she suffered—any monetary loss from mailing in RMA forms, any additional interest she was required to pay, or even any allegation that one of the Defendants submitted information to a credit reporting agency. The closest Plaintiff gets to alleging damages is her statement that she "was inconvenienced and incurred expenses in seeking the information the Defendants refused to provide" or her prayer for relief to a possible, unspecified damage to her credit report. ECF No. 1-2 at PageID.29, 35. However, 12 U.S.C. § 2605 only requires Defendants to promptly reply and either provide the information or explain why they are not providing it. 12 U.S.C. § 2605(e). It does not require them to provide any and all information. Also, her prayer for relief as to unalleged negative information on her credit report is insufficient to state a claim for damages under RESPA.

Plaintiff attempts to rectify the need for damages in her response by arguing she suffered "actual damages, including, but not limited to (1) out-of-pocket expenses incurred dealing with the RESPA violation [the QWR violation] including expenses for preparing, photocopying and obtaining certified copies of correspondence, (2) lost time and inconvenience to the extent it resulted in actual pecuniary loss, (3) late fees and (4) denial of credit or denial of access to full amount of credit line, additional damages in the amount of $2,000.00, plus attorney's fees, the cost of this lawsuit, and litigation expenses." ECF No. 8 at PageID.392. Plaintiff could have sought to amend her complaint in response to the motion to dismiss. However, Plaintiff chose to insert the new allegations into her response to the motion instead. Motions to dismiss are decided on the facts alleged in the complaint and as such, Plaintiff's additional facts included in her response will not be considered.

Accordingly, Plaintiff's three claims under RESPA – Count V for violations of 12 CFR 1024.41 which is based on RESPA, Count VI – Damages under the RESPA, and Count IX – Dual-tracking violation from RESPA will be dismissed for failure to state a claim due to Plaintiff's failure to plead actual damages as required by RESPA.

**F.**

In Count VII, Plaintiff claimed Defendants breached their contract, *i.e.*, the note and mortgage, with Plaintiff. ECF No. 1-2 at PageID.29-30. The elements for a Michigan breach of contract claim are "(1) there was a contract, (2) the other party breached the contract, and (3) the breach resulted in damages to the party claiming breach." *Bank of Am., N.A. v. First Am. Title Ins. Co.*, 878 N.W. 2d 816, 829 (Mich. 2016).

The first alleged breach occurred when "Defendants failed to provide Plaintiff the notices required by the Mortgage prior to foreclosing, constituting a breach of contract." *Id.* at PageID.30.

In their motion to dismiss, Defendants assert "Plaintiff's claim fails because the Notice of Default makes clear that Defendants complied with the notice provisions of Paragraph 22 of the Mortgage." ECF No. 5 at PageID.184. Additionally, Defendants argue "Plaintiff has not alleged any damages related to the claimed breach" and as such, has not stated a claim for damages. *Id.* Defendants included an alleged Notice of Default that was sent to Plaintiff in their motion. However, Plaintiff did not attach a notice of default to her complaint and in fact, alleges she did not receive a notice of default. Whether she did receive a notice of default is a question that could be resolved with a Rule 56 motion. However, in a 12(b)(6) motion, the facts alleged by Plaintiff are presumed to be true. And in this case, Plaintiff alleges she never received a notice of default and as a result, she lost her home to foreclosure. If true, this would be a breach of contract. Accordingly, Plaintiff prevails on the motion to dismiss the breach of contract claim.

The second allegation asserted that Defendants "breached . . . the implied covenant of good faith and fair dealing in the contract with Plaintiff by . . . a. Failing to send Plaintiff the notices required by the Mortgage; b. Dual tracking Plaintiff; c. Disingenuously negotiating loss mitigation assistance with Plaintiff; [and] d. Misleading Plaintiff about approval and extension of loss mitigation assistance as an alternative to foreclosure." *Id.* Defendants argue the breach of contract claim should also be dismissed because Michigan courts do not recognize a claim for breach of the implied covenant of good faith and fair dealing. ECF No. 5 at PageID.183; ECF No. 13 at PageID.1782.

It is well-established that a plaintiff cannot assert an independent cause of action for breach of an implied covenant of good faith and fair dealing in a contract. The implied covenant of good faith and fair dealing "is not enforceable as an independent cause of action in Michigan." *Gorman v. Am. Honda Motor Co.*, 839 N.W. 2d 223, 235 (Mich. Ct. App. 2013). However, Michigan courts

have held that a plaintiff may bring a breach of contract claim based upon defendant's alleged failure to meet the standards of good faith and fair dealing in executing contract provisions when left to their own discretion. *Liggett Rest. Grp., Inc. v. City of Pontiac*, 2005 WL 3179679 at *1 (Mich. Ct. App. Nov. 29, 2005) ("A breach of contract may be found where bad faith or unfair dealing exists in the performance of a contractual term when the manner of performance was discretionary.").

The question of whether a plaintiff can sue for breach of implied duty of good faith and fair dealing is resolved by footnote in *Ann Arbor Acquisition Corp. v. General Motors Corp.*, "In *Belle Isle Grill Corp. v. Detroit*, this Court stated in response to the plaintiff's argument-that every contract contains an implied covenant of good faith and fair dealing-that Michigan did not recognize this type of claim. However, this Court cited *Ulrich v. Fed Land Bank of Saint Paul* [to justify the conclusion], which held that Michigan did not recognize a *separate* tort action for breach of an implied covenant of good faith." 2005 WL 658761 at *3 n.1 (Mich. Ct. App. 2005) (emphasis in original). Michigan law prohibits an independent claim for breach of implied duty of good faith and fair dealing. *Liggett Rest. Grp., Inc. v. City of Pontiac*, 2005 WL 3179679 at *1 (Mich. Ct. App. Nov. 29, 2005) ("Michigan does not recognize a separate cause of action for breach of an implied covenant of good faith and fair dealing apart from a claim for breach of the contract itself."). However, a plaintiff is allowed to bring a breach of contract claim premised on alleged violations of good faith and fair dealing, as long as the violations relate to defendant's discretionary actions to fulfill the terms of the contract. *Brimm v. Wells Fargo Bank, N.A.*, 688 Fed. Appx. 329, 331 (6th Cir. 2017) ("Michigan recognizes an implied covenant of good faith and fair dealing only when one party 'makes the manner of its performance a matter of its own discretion.'" (quoting *Burkhardt v. City Nat'l Bank of Detroit*, 226 N.W.2d 678, 680 (1975))); s*ee also 5504*

*Reuter, LLC v. Deutsche Bank Nat. Tr. Co.*, 2014 WL 7215197 at *4 (Mich. Ct. App. Dec. 18, 2014) ("In order to succeed on a breach of contract claim, plaintiff would need to show a breach of the terms of the contract itself; it cannot premise a breach of contract action on a breach of the implied duty of good faith and fair dealing.").

In this case, Plaintiff alleged two categories of breach of contract – 1) breach of the express provision of the contract (failure to provide the stated notices) and 2) multiple allegations of failure to follow the implied covenant of good faith and fair dealing regarding Defendants' execution of unspecified terms in the contract (i.e., terms left to a party's discretion). Plaintiff has properly pled a breach of contract claim with two separate, and properly pled, allegations for the breach. Defendants' motion to dismiss on the breach of contract claim will be denied.

**G.**

In Count VIII Plaintiff requests her foreclosure by advertisement be converted to a judicial foreclosure. ECF No.1-2 at PageID.30-31. Plaintiff cites the statute governing judicial foreclosure and explains the requirements for a judicial foreclosure. *Id.* Then, Plaintiff pleads "[i]f they are legally allowed to do so, there would be no prejudice to Defendants if they [were] required to foreclose judicially instead of simply by advertisement." *Id.* Defendants argue Michigan law does not allow a foreclosure to be converted from a foreclosure by advertisement to a judicial foreclosure, nor does Plaintiff provide any law authorizing a court to convert a foreclosure by advertisement to a judicial foreclosure. ECF No. 5 at PageID.184-185. Michigan courts have held that "[i]f no cause of action [for converting foreclosure by advertisement to judicial foreclosure] exists under the statute, then plaintiff has failed to state a claim for which relief may be granted, and summary disposition is appropriate because that count would be unenforceable as a matter of law and because no amount of factual development could possibly justify a right to recovery."

*Long v. Chelsea Cmty. Hosp.*, 557 N.W.2d 157, 159 (1996) (distinguished by *Feyz v. Mercy Mem'l Hosp.*, 692 N.W.2d 416, (Mich. Ct. App. 2005) (vacated by *Feyz v. Mercy Mem'l Hosp.*, 719 N.W.2d 1 (Mich. 2006) (no adverse holding to quoted language))); *Lash v. City of Traverse City*, 720 N.W.2d 760, 763 (Mich. Ct. App. 2006) (affirmed in part, reversed in part, on other grounds, *Lash v. City of Traverse City*, 735 N.W.2d 628 (Mich. 2007)); *Estate of Doreen Bessette v. Wilmington Tr., N.A.*, 2016 WL 6947480 at *3 (E.D. Mich. 2016). Additionally, specifically on this point, Judge Rosen has concluded that "[t]here is nothing in the foreclosure statutes providing for the conversion of a foreclosure by advertisement to a judicial foreclosure." *Estate of Doreen Bessette*, 2016 WL 6947480 at *3. Plaintiff has failed to assert any legal foundation to convert a foreclosure by advertisement to judicial foreclosure. In addition, the house has already been foreclosed upon and the statutory redemption period has expired. Even if there were legal grounds to convert the foreclosure to a judicial foreclosure, there is no foreclosure to convert because it has already occurred. *Holliday v. Wells Fargo Bank, N.A.*, 569 Fed. Appx. 366, 370 (6th Cir. 2014). Plaintiff has failed to state a claim for conversion and the count will be dismissed.

**H.**

Plaintiff's final count is for "injunction and other relief." ECF No. 1-2 at PageID.32-33. Plaintiff identifies multiple elements that she alleges meet the standard for a temporary restraining order, "great likelihood of success on the merits of the case," "irreparable harm," "no adequate remedy at law," "harm to the Defendants is considerably less if the Temporary Retraining Order is issued than the harm to the Plaintiff if the Temporary Restraining Order does not issue," "granting of this Temporary Restraining Order will further the public interest," and "that Notice to the Defendants was not required because such notice would precipitate further injury to Plaintiff as any efforts to evict Plaintiff must be discontinued immediately." *Id.* A temporary restraining

order is a motion that can be filed *ex parte* by a plaintiff. Fed. R. Civ. P. 65(b). However, it must be filed as a motion, not buried as a count in a complaint. If Plaintiff seeks a temporary restraining order or a preliminary injunction, a motion must be filed with this Court and Plaintiff must follow FRCP 65.

Also under Count X Plaintiff "prays that this Honorable Court shall grant her Motion and stay and Toll the Redemption Period," alleges "[t]hat the right to have equitable controversies dealt with by equitable methods is as sacred as the right of trial by jury," and explains that "after hearing the evidence, the court may grant a constructive trust over the property in favor of Plaintiff." *Id.* These are all forms of relief, not claims of misconduct. Because Plaintiff has not alleged a violation of any statute or law in Count X, Defendants' motion for failure to state a claim as to Count X will be granted.

### III.

Accordingly, it is hereby **ORDERED** that Defendants' motion to dismiss, ECF No. 5, is **GRANTED IN PART AND DENIED IN PART**. Defendants motion to dismiss is granted on Counts II, III, V, VI, IX, and X. Defendants motion to dismiss is denied as to Count I, IV, and VIII.

It is further **ORDERED** that Counts II, III, V, VI, IX, and X of Complaint, ECF No. 1, are **DISMISSED WITH PREJUDICE**.

Dated: January 29, 2020                                                        s/Thomas L. Ludington
                                                                                            THOMAS L. LUDINGTON
                                                                                             United States District Judge