UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JENNIFER B. MILLER (FKA FOSGITT),

        Plaintiff,

v.

THE BANK OF NEW YORK MELLON, SUCCESSOR TO JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR F/B/O HOLDERS OF STRUCTURED ASSET MORTGAGE INVESTMENTS II INC., BEAR STERNS ALT-A TRUST 2005-10, MORTGAGE PASS-THROUGH CERTIFICATES AND SELECT PORTFOLIO SERVICING, INC.,

        Defendants.
_____/

Case No. 19-CV-12826

Honorable Thomas L. Ludington

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DISMISSING PLAINTIFF'S COMPLAINT**

On August 28, 2019, Plaintiff, Jennifer Miller, filed a complaint against Defendants Bank of New York Mellon and Select Portfolio Servicing, in Midland County Circuit Court. ECF No. 1-2 at PageID.15–35. Plaintiff asserts ten counts in her Complaint—seeking declaratory relief, asserting quiet title, alleging illegal foreclosure under Michigan law and violations of the federal Real Estate Settlement Procedures Act, alleging breach of contract, requesting conversion to judicial foreclosure, and seeking injunctive relief. *Id.* The case was removed on September 27, 2019. ECF No. 1. On October 18, 2019, Defendants filed a motion to dismiss. ECF No. 5. The Motion to Dismiss was granted in part and denied in part. ECF No. 14. Three claims remain, Counts I, IV, and VII.

On November 13, 2020, Defendants filed a Motion for Summary Judgment. ECF No. 22. Plaintiff's response was due on December 4, 2020. However, no response was received.

**I.**

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). The Court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

**II.**

Plaintiff obtained a $423,600 loan from CMX Mortgage Company LLC on October 17, 2005. ECF No. 22-7 at PageID.2071. Plaintiff and her former spouse[1] "Richard L. Fosgitt II, granted Mortgage Electronic Registration Systems, Inc. ('MERS') a mortgage [ ] encumbering real property located at 5004 Bristlecone Dr, Midland, Michigan" ("the property"). ECF No. 22-7 at PageID.2072. She lived at the property from 2005 or 2006 until 2011 and returned in 2017. ECF No. 22-8 at PageID.2531–32. As of August 27, 2020, she lived in the house. ECF No. 22-8 at PageID.2531. She testified that she read the mortgage and Note prior to signing them. ECF No. 22-8 at PageID.2540.

---

[1] Plaintiff and Richard Fosgitt were divorced in September 2011. ECF No. 22-8 at PageID.2533.

**A.**

Part of the mortgage provides,

> All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address.

ECF No. 22-3 at PageID.2050–51. It also states,

> **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

ECF No. 22-3 at PageID.2051–52. Additionally, it explains,

> **22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless

> Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.
>
> If Lender invokes the power of sale, Lender shall give notice of sale to Borrower in the manner provided in Section 15. Lender shall publish and post the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order; (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

ECF No. 22-3 at PageID.2053.

**B.**

The record includes a Note dated October 17, 2005 for a $423,600.00 loan. ECF No. 22-2. The lender's name is CTX Mortgage Company, LLC. ECF No. 22-2 at PageID.2036. Monthly payments were to begin on December 1, 2005 at a rate of $2,206.25. ECF No. 22-2 at PageID.2036. A late charge can be added for any payment paid 15 days late. ECF No. 22-2 at PageID.2038. The note also specifies

> **(B) Default**
> If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
> **(C) Notice of Default**
> If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal

> that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.
> . . .
> **(E) Payment of Note Holder's Costs and Expenses**
> If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

ECF No. 22-2 at PageID.2038. The Note also provides,

> **8. Giving of Notices**
> Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.
> Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

ECF No. 22-2 at PageID.2038.

## C.

On December 1, 2005, the loan was transferred from CMX Mortgage Company to Bear Stearns ALT-A Trust 2005-10, Mortgage Pass-Through Certificates, Series 2005-10. ECF No. 22-7 at PageID.2072. On March 22, 2016, Plaintiff was notified that her loan servicer changed from JP Morgan Chase Bank N A to Select Portfolio Servicing (SPS). ECF Nos. 22-4; 22-7 at PageID.2072, 2491. In November 2016, the mortgage was assigned from Mortgage Electronic Registration Systems, Inc. "as nominee for CTX Mortgage Company, LLC" to The Bank of New York Mellon, Successor Trustee to JPMorgan Chase Bank, National Association, as Trustee F/B/O Holders of Structured Asset Mortgage Investments II Inc., Bear Stearns Alt-A Trust 2005-10, Mortgage Pass-Through Certificates, Series 2005-10. ECF No. 22-5 at PageID.2061.

**D.**

Plaintiff fell behind in her payments. Her most recent payment was $500 on March 27, 2017. According to SPS records, this payment "brought the due date on the Loan to September 1, 2016." ECF No. 22-7 at PageID.2073, 2498. SPS explained in a letter to the Michigan Attorney General that as of January 18, 2019, the account was 29 payments past due. ECF No. 22-14 at PageID.2785.

On May 10, 2017 a notice of default and right to cure was mailed to the property. ECF No. 22-6. Plaintiff testified she "believe[s]" she was residing at the property when the notice was mailed. ECF No. 22-8 at PageID.2549. The notice stated that the Borrower

> failed to make payments under the Note and Security Instrument. This letter is a formal demand for payment.
>
> **Action Require to Cure the Default**
> To cure this default, you must pay the Amount Required to Cure together with payments which may subsequently become due, on or before the Cure Date listed below.
>
> **Amount Required to Cure the Default**
> As of the date of this letter, the total amount due and required to cure the default on your loan is $32,114.17 (Amount Require to Cure) as itemized below[2]

ECF No. 22-6 at PageID.2063–65. The letter indicated that if the amount to cure payment is not received by the cure by date, "SPS may initiate foreclosure and require immediate payment in full of the entire outstanding unpaid amount on the account. In other words, SPS may accelerate all payments owing and sums secured by the Security Instrument." ECF No. 22-6 at PageID.2065.

Plaintiff attempted to obtain a loan modification. She testified at her deposition,

> I have a full record of multiple times that SPS sent application forms and asked for more information, all of which I had provided multiple times, complete

---

[2] The letter states that $32,904.36 is owed on the loan for back payments from September 1, 2016, plus a $14.00 advance on the behalf of the customer for a total of $32,918.36 owed. Less an unapplied balance of $804.19. The total owed is $32,114.17. The letter indicated it must be paid by June 9, 2017 to cure the default. ECF No. 22-6 at PageID.2065.

>applications. I'm not sure what the magic number was on how many times I was supposed to submit the same information.

ECF No. 22-8 at PageID.2564–65. She continued,

>[SPS] sent multiple forms and all forms were always completed, always sent back. They got to the point that I was sending them back via email and mail, usually sending them back at the end being via tracked mail because it just seemed to end up in an abyss somewhere. God only knows where they ended up.

ECF No. 22-8 at PageID.2565. She testified that she had two complete applications but was never given any options for loan modification. ECF No. 22-8 at PageID.2566. However, she did not respond to the instant motion and there is no evidence in the record of these complete applications.

On May 16, 2018, "SPS sent correspondence to Plaintiff via first class mail advising her that her request for a loan modification had been denied." ECF No. 22-7 at PageID.2073. The letter explained,

>You were sent an Assistance Review Application on 03/06/2018. This application listed all documents required from you to complete a loss mitigation application so we could evaluate your account for loss mitigation assistance. The notice clearly stated the deadline for returning these documents.
>SPS did not receive the required documents within the timeline specified. As such, we did not evaluate this account for loss mitigation and have closed this request for review.

ECF No. 22-7 at PageID.2512 (emphasis omitted). An SPS employee averred in an affidavit,

>SPS sent correspondence to Plaintiff via first class mail in response to Plaintiff's request for appeal of the denial of her loan modification request. In this letter, SPS advised Plaintiff that the denial was accurate and that the foreclosure was moving forward.

ECF No. 22-7 at PageID.2073, 2515–16.

**E.**

On February 22, 2018, SPS mailed Plaintiff a notice that a foreclosure sale was scheduled for March 27, 2018. ECF No. 22-13 at PageID.2676. Shannon Guilbeaux swore that she posted the notice of foreclosure on the front door of the property on February 28, 2018, noticing a sheriff's

sale for March 27, 2018. ECF No. 22-9. However, Plaintiff testified that she did not see the notice posted to her door on February 28, 2018. ECF No. 22-8 at PageID.2590–92. A Midland Daily News[3] editor swore the notice of foreclosure was published in the newspaper for four consecutive weeks, beginning February 27, 2018. ECF No. 22-9. Plaintiff testified that she was "not aware of whether it was published or not published." ECF No. 22-8 at PageID.2559.

The sheriff's sale was adjourned weekly from March 27, 2018 to March 19, 2019. ECF No. 22-10. SPS mailed multiple letters notifying Plaintiff of the adjourned sheriff's sales. ECF No. 22-13 at PageID.2677–80, 2683. The sheriff's sale was conducted on March 19, 2019 and Defendant Trust purchased the property for $415,650.00. ECF Nos. 22-7 at PageID.2073, 2518; 22-9.

**III.**

After the Opinion and Order Granting in Part Defendants' Motion to Dismiss, there are three remaining claims, Count I – declaratory judgment, Count IV – which is construed as a breach of contract claim, and Count VII – breach of contract.

**A.**

Count IV is titled "Illegal foreclosure – respecting notice of default." ECF No. 1-2 at PageID.26–27. Plaintiff alleges that Defendants "failed to provide the Notice of Default under Section 22 of the Mortgage," "privately accelerated the Mortgage without first providing the Notice of Default," "published and posted a notice of sale without first providing the Notice of Default." *Id.* As a result, Plaintiff alleges she "was severely damaged by this omission in that her common law 'right to cure' was lost without notice replaced with a less valuable collection of rights, to wit, a contractual right to reinstate the loan and a right to pay the entire accelerated loan

---

[3] A Midland County newspaper.

balance in full." *Id.* Plaintiff does not expressly state the common law right she alleges was violated for her claim, but based upon her final paragraph in the claim, it will be construed as a breach of contract claim based upon Defendants alleged failure to offer her an opportunity to cure her default.

The elements for a Michigan breach of contract claim are "(1) there was a contract, (2) the other party breached the contract, and (3) the breach resulted in damages to the party claiming breach." *Bank of Am., N.A. v. First Am. Title Ins. Co.*, 878 N.W. 2d 816, 829 (Mich. 2016).

In response, Defendants articulate several arguments. First, they argue "this breach claim is barred by Plaintiff's prior material breach (failure to make payments)." ECF No. 22 at PageID.1993. Second, they contend there "is no genuine issue of material fact that the [notice of default] was sent and that the notices of foreclosure complied with the Mortgage and Michigan's foreclosure by advertisement statute." *Id.* at PageID.1994 (citation omitted). Third, "Plaintiff's claim to have been damaged allegedly by losing her right to cure is baseless; the Mortgage allowed her to reinstate by curing the default any time up to five days before the sheriff's Sale. Plaintiff never availed herself of that right." *Id.* (citation omitted). As such, "there is no causation between an alleged failure to send a [notice of default] and Plaintiff's alleged loss of a right to cure." *Id.*

All three of Plaintiff's claims regarding the breach of contract are premised on the assertion that Defendants did not provide Plaintiff a notice of default. However, Defendants included a copy of the notice of default and right to cure that was mailed to Plaintiff on May 10, 2017. This was mailed months prior to the initial notice of foreclosure sale and newspaper publication in February and March 2018. Plaintiff also testified that she believes she was residing at the property on that date. Plaintiff has offered no evidence demonstrating that she never received the notice of default or that it was not mailed as demonstrated by Defendants. Plaintiff's bare assertion that she did not receive the notice of default was sufficient to prevail on the Motion to Dismiss, but she cannot rely

on allegations from her Complaint to defeat a motion for summary judgment. Defendants' Motion for Summary Judgment on Count IV will be granted.

**B.**

In Count VII, Plaintiff claimed Defendants breached their contract, *i.e.*, the note and mortgage, with Plaintiff. ECF No. 1-2 at PageID.29-30.

Again, the elements for a Michigan breach of contract claim are "(1) there was a contract, (2) the other party breached the contract, and (3) the breach resulted in damages to the party claiming breach." *Bank of Am., N.A. v. First Am. Title Ins. Co.*, 878 N.W. 2d 816, 829 (Mich. 2016).

Defendants first argue that Plaintiff first breached the contract by failing to pay her mortgage in September 2016. ECF No. 22 at PageID.1983. Second, Defendants refute the four alleged breaches of contract identified in Plaintiff's Complaint. As articulated in this Court's previous Opinion, Plaintiff's four claims are divided into two separate theories of breach of contract liability. First, "a. Failing to send Plaintiff the notices required by the Mortgage;" is an allegation of a breach of the express terms of the contract. Second,

> b. Dual tracking Plaintiff;
> c. Disingenuously negotiating loss mitigation assistance with Plaintiff;
> d. Misleading Plaintiff about approval and extension of loss mitigation assistance as an alternative to foreclosure.

are allegations of breach of the implied covenant of good faith and fair dealing. ECF No. 1-2 at PageID.30; ECF No. 14 at PageID.1879.[4]

---

[4] "Plaintiff alleged two categories of breach of contract – 1) breach of the express provision of the contract (failure to provide the stated notices) and 2) multiple allegations of failure to follow the implied covenant of good faith and fair dealing regarding Defendants' execution of unspecified terms in the contract (i.e., terms left to a party's discretion.)"

**i.**

In the Opinion and Order Granting in Part Defendants' Motion to Dismiss, this Court held

[w]hether she did receive a notice of default is a question that could be resolved with a Rule 56 motion. However, in a 12(b)(6) motion, the facts alleged by Plaintiff are presumed to be true. And in this case, Plaintiff alleges she never received a notice of default and as a result, she lost her home to foreclosure. If true, this would be a breach of contract.

ECF No. 14 at PageID.1877. Unlike in the previous Opinion and Order, Plaintiff cannot now rely solely on the allegations in her Complaint. She alleges that Defendants failed to send the notice of default required by the mortgage. However, Defendants offered evidence that Plaintiff was mailed a notice of default, that they worked with her on potential loan modifications, that the notice of the sheriff's sale was posted to her door and in the local newspaper, and the sheriff's sale was adjourned for almost a year. Plaintiff's testimony that she does not remember the notice of sheriff's sale being posted to her door on February 28 is insufficient to create a question of material fact whether Defendants breached the contract by failing to send the notice required by the mortgage. Defendants' Motion for Summary Judgment on the breach of contract claim under the first theory of liability will be granted.

**ii.**

For the second, third, and fourth allegations (*i.e.*, the claims regarding loss mitigation), Defendants first argue, "Plaintiff does not identify which clause of the Mortgage or Note include modification duties or which Defendants breached . . . [and] Defendants cannot breach a contract term that does not exist." ECF No. 22 at PageID.1989.

As this Court previously concluded, these three claims are for breach of the implied duty of good faith and fair dealing, not the express contract terms. Therefore, the fact that the contract

did not include these terms is not a persuasive argument against the breach of contract claim. Defendants' Motion for Summary Judgment on this theory will be denied.

In Defendants' Motion for Summary Judgment, they proffer three arguments why they did not violate the duty of good faith and fair dealing.

> First, there is no genuine issue of material fact that all contract notices were sent. There can be no breach of good faith and fair dealing[] where the contract has not been breached. Second, there is no genuine issue of material fact that the Note and Mortgage do not have any clauses requiring modification. Defendants cannot be liable for violating a good faith and fair dealing duty, when there is no contract duty in the first place. Third, there is nothing in the Note or Mortgage that made the 'manner of its performance a matter of its own discretion' and Defendants are permitted to advance the Trust's interest by foreclosing.

ECF No. 22 at PageID.1993 (emphasis and citation omitted).

This Court previously explained that Michigan courts have held that a plaintiff may bring a breach of contract claim based upon a defendant's alleged failure to meet the standards of good faith and fair dealing in executing contract provisions when left to their own discretion. *Liggett Rest. Grp., Inc. v. City of Pontiac*, 2005 WL 3179679 at *1 (Mich. Ct. App. Nov. 29, 2005) ("A breach of contract may be found where bad faith or unfair dealing exists in the performance of a contractual term when the manner of performance was discretionary."); *Brimm v. Wells Fargo Bank, N.A.*, 688 Fed. Appx. 329, 331 (6th Cir. 2017) ("Michigan recognizes an implied covenant of good faith and fair dealing only when one party 'makes the manner of its performance a matter of its own discretion.'") (quoting *Burkhardt v. City Nat'l Bank of Detroit*, 226 N.W.2d 678, 680 (1975))).

As Defendants argued, the mortgage does not require the mortgage owner to engage in loan modification discussions. Despite the lack of contractual provisions, Defendants responded both to Plaintiff's request for a loan modification and her appeal. Defendants have offered evidence that the reason it could not proceed with Plaintiff's request for loan modification was a lack of sufficient

information provided by Plaintiff. Plaintiff has proffered no evidence demonstrating her compliance with Defendants' requests, absent her unsubstantiated testimony. She has offered no evidence of a letter stating her application was complete or that she supplied the specific documents requested by Defendants. In addition, the foreclosure sale was delayed weekly for a year. Plaintiff has not identified any terms of the contract where Defendants' breached the duty of good faith and fair dealing in their discretionary execution of the terms of the contract. Defendants have demonstrated there is no genuine issue of material fact that they did not breach the duty of good faith and fair dealing. Defendants' Motion for Summary Judgment on Count VII will be granted.

## C.

In Count I of her Complaint, "Plaintiff prays this Court declare the rights and interests of the parties and if Plaintiff's rights are superior to that of Defendants' rights." ECF No. 1-2 at PageID.23. Michigan Court Rule 2.605 provides power to Michigan courts to enter declaratory judgments. Specifically, the rule provides

> (A) Power to Enter Declaratory Judgment.
> (1) In a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted.
> (2) For the purpose of this rule, an action is considered within the jurisdiction of a court if the court would have jurisdiction of an action on the same claim or claims in which the plaintiff sought relief other than a declaratory judgment.

"Because declaratory judgment acts are procedural in nature and do not affect underlying substantive rights, the *Erie* doctrine, mandates application of the Declaratory Judgment Act, 28 U.S.C. § 2201, to [plaintiff's] request for declaratory relief based on state law." *Horn v. City of Mackinac Island*, 938 F. Supp.2d 712, 714 n.1.

The Sixth Circuit has explained there are two principles courts should use "in determining whether a declaratory ruling is appropriate." *Grand Truck W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984). First is whether "the judgment will serve a useful purpose in clarifying and settling the legal relations in issue" and second is if the declaratory judgment "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Id.* These two principles should be applied by analyzing five factors

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata;' (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective." *Id.*

This Court denied Defendants' Motion to Dismiss on Count I because Plaintiff alleged that she did not receive notice of the foreclosure proceedings. ECF No. ECF No. 14 at PageID.1868–70. However, Defendants now submit evidence that Plaintiff did receive notice of the foreclosure proceedings.

In their Motion for Summary Judgment, Defendants argue "[b]ecause the redemption period expired, Plaintiff also lacks standing to bring any claim seeking declaratory relief as to the Property." As this Court found in Counts IV and VII, Plaintiff was given proper notice of her default, the pending sheriff sale, and the redemption period. In addition, all claims in her Complaint have been or will be dismissed at the conclusion of this opinion. Accordingly, a declaratory judgment for Plaintiff will not "serve a useful purpose in clarifying and settling the legal relations in issue." In fact, the opposite is true. Defendants' Motion for Summary Judgment on Count I will be granted.

## IV.

Accordingly, it is hereby **ORDERED** that Defendants' Motion for Summary Judgment, ECF No. 22, is **GRANTED**.

It is further **ORDERED** that Plaintiff's Complaint, ECF No. 1, is **DISMISSED**.


Dated: January 5, 2021                              s/Thomas L. Ludington
                                                    THOMAS L. LUDINGTON
                                                    United States District Judge